DONALD W. FAUSNER AND ANITA C. FAUSNER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4194–68. Filed January 7, 1971.

Donald W. Fausner, pro se.
*John W. Dierker*, for the respondent.

STERRETT, *Judge:* Respondent determined a deficiency of $1,030.80 in petitioners' income tax for the taxable year 1965.

Both petitioners and respondent have made concessions and only four issues remain for decision. They are: (1) Whether certain payments claimed by petitioners as deductible contributions were properly disallowed as nondeductible personal expenses; (2) whether petitioner Donald W. Fausner, an airline pilot, can deduct a portion of the costs of transportation between his residence and place of work; (3) whether petitioner Donald W. Fausner can deduct the costs of transportation between the two airports where he was employed; and (4) whether the costs of Donald W. Fausner's transportation to the sites of various proficiency tests, physical examinations, union meetings, and recurrent training can be deducted.

### FINDINGS OF FACT

At trial the parties stipulated certain facts and exhibits which are incorporated herein by this reference.

Donald W. Fausner (hereinafter sometimes referred to as Donald) and Anita C. Fausner are husband and wife. At the time of filing their petition herein petitioners resided at Commack, N.Y. Presently petitioners reside in Denton County, Tex. They filed a joint Federal income tax return for the calendar year 1965 with the district director of internal revenue at Brooklyn, New York.

During 1965 petitioners paid $2,283.43 to LaSalle Military Academy, $112.45 to Christ the King Parochial School, $84.95 to St. Joseph's Parochial School, and $53.95 for parochial school books. Petitioners deducted these amounts as charitable contributions on their 1965 income tax return. The money paid to LaSalle Military Academy was on account of one of petitioners' sons and included the costs of tuition, books, athletics, and other items not specified by petitioners. LaSalle was attended by petitioners' son for the purpose of getting an education. If the amount in question had not been paid to LaSalle, petitioners' son could not have attended the school except on scholarship. It was stipulated that the amounts paid to Christ the King Parochial School, St. Joseph's Parochial School, and for parochial school books were expended for the education of petitioners' other children.

Donald is a commercial airline pilot. During the year in issue Donald was employed by American Airlines (hereinafter sometimes referred to as American) as a captain. Donald traveled to his place of employment by private automobile. On their 1965 return petitioners deducted $105 for transportation expenses incurred by Donald traveling to work.

As a condition of his employment Donald must have knowledge of certain American Airlines and Federal Aviation Administration

(hereinafter sometimes referred to as FAA) rules and regulations. In pursuance of this condition, American issued to Donald American Airlines Operating Manual 707, Flight Manual parts I and II, and maps and charts. American required that the manuals, maps, and charts be kept up to date with revisions it provided. It was also required that Donald have the manuals, maps, and charts with him while flying. In compliance with company rules Donald carried with him a "flight kit bag" in which to keep his required flight equipment. The flight kit bag contained Donald's manuals, maps, and charts in addition to a logbook and a flashlight. The complete flight kit bag weighed 40 pounds. In fulfillment of American rules Donald wore a uniform while working. The uniform could be worn only when on duty and when traveling to and from work. Donald also carried with him an overnight bag containing personal items and civilian clothes for use during layovers. Layovers were required by the FAA. The uniform could not be worn during layovers except when traveling between a hotel and the flight.

During the year in issue Donald flew out of either John F. Kennedy International Airport (hereinafter sometimes referred to as JFK) or LaGuardia Airport. The scheduled flights on which Donald worked would either depart and return to LaGuardia or depart and return to JFK. A flight would depart from one and return to the other airport only in the event circumstances such as a low ceiling prevented landing at the airport of origin. Interairport transportation was provided Donald by American in such instances. Otherwise Donald was not furnished interairport transportation by his employer. When a flight departed from JFK, Donald would first drive to LaGuardia. Similarly when a flight returned to JFK, Donald would drive to LaGuardia and then to his home. The stops at LaGuardia were necessary so that Donald could pick up company correspondence, manual changes, and other material, and also have contact with the chief pilot and Air Transport Control. A mailbox was established for Donald at LaGuardia. American Airlines would not send official correspondence and material to Donald's home. A main office was maintained by American at LaGuardia.

American did not provide a lockable storage facility for Donald's equipment or uniforms at either JFK or LaGuardia. Consequently, neither uniforms nor equipment could be left at the airport. Since the company provided no clothes changing facilities at either airport, Donald had to drive to and from work in his uniform. No study area for revising manuals, maps, and charts by pilots was maintained by American at either airport. Donald studied and made necessary revisions on his material at home.

Donald worked irregular hours. Due to Donald's working schedule public transportation was available only on a sporadic basis.

The parties have stipulated that the round-trip distance between petitioners' former home in Commack and LaGuardia is 84 miles, and that Donald made 82 round trips. It has also been stipulated by the parties that Donald made 30 trips between LaGuardia and JFK and that the one-way distance between the two airports is 15 miles. The costs of transportation between the two airports were not included in the amount petitioners deducted for transportation but rather were included in the amount deducted for Donald's educational expenses.

On their return for 1965 petitioners deducted $236.70 as educational expenses incurred by Donald. The $236.70 was spent on transportation. The deduction included the costs of trips Donald made to undisclosed locations for proficiency checks, flight kit inspection, B or D box programs, American Airlines physical examinations, FAA physical examinations, and recurrent training. All of these activities were required as a condition of Donald's employment. Also included in the educational expense deduction were the costs of transportation to union meetings. As noted earlier, part of the claimed expenses for education were attributable to 30 trips Donald made between LaGuardia and JFK although the precise amount so claimed was not set forth.

The amounts here claimed by petitioners to be charitable contributions were disallowed by respondent in a statutory notice dated June 14, 1968. In that notice respondent asserted that the amounts represented personal expenses and were nondeductible under section 262 of the Internal Revenue Code of 1954.[1] The statutory notice also stated:

(d) The amount of $105.00 claimed for transportation is not allowed because it has not been established that such amount represents an ordinary and necessary business expense or was expended for the purpose designated.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(f) The amount of $236.70 claimed for expenses for education necessary for qualifications as an airplane pilot is not allowed because it has not been established that such amount represents an ordinary and necessary business expense or was expended for the purpose designated.

### OPINION

The first issue for decision is whether amounts paid to certain parochial schools can be deducted by petitioners as charitable contributions. To be deductible the amounts in question must qualify under

[1] All section references are to the 1954 Internal Revenue Code unless otherwise stated.

section 170 (c) of the Internal Revenue Code of 1954 which in relevant part provides:

SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.

(c) CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

\*      \*      \*      \*      \*      \*      \*

(2) A corporation, trust or community chest, fund, or foundation—

\*      \*      \*      \*      \*      \*      \*

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals;

(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; \* \* \*

One of petitioners' children attended LaSalle Military Academy during 1965. Other of petitioners' children attended Christ the King Parochial School and St. Joseph's Parochial School. During the year in issue petitioners paid $2,283.43 to LaSalle, $112.45 to Christ the King Parochial School, $84.95 to St. Joseph's, and expended $53.95 on parochial school books. These amounts were deducted as charitable contributions by petitioners on their 1965 Federal income tax return. There is no question as to whether the various schools are institutions of the sort contemplated by section 170(c). The point of contention is whether the amounts deducted by petitioners are gifts or contributions within the meaning of section 170(c). We hold they are not.

As used in section 170(c), the term "contribution" is synonymous with the term "gift," and the term "gift" does not have an esoteric meaning in the context of the section. *Channing* v. *United States*, 4 F. Supp. 33, 34 (D. Mass. 1933), affirming per curiam 67 F. 2d 986 (C.A. 1, 1933). Thus, to qualify the payments must have been made as acts of detached or disinterested generosity and not for the anticipated benefit of the payor. *Commissioner* v. *Duberstein*, 363 U.S. 278 (1960).

The amounts petitioners paid for schooling and books were unquestionably expended so that petitioners' children could receive an education. Such payments are certainly of a personal, living, or family nature and nondeductible under section 262. *Harold DeJong*, 36 T.C. 897, 899 (1961), affd. 309 F. 2d 373 (C.A. 9, 1962); *James A. McLaughlin*, 51 T.C. 233 (1968), affirmed per curiam in an unreported opinion (C.A. 1, May 28, 1969, 23 A.F.T.R. 2d 69–1763, 69–2 U.S.T.C. par. 9467).

On brief petitioners argue that the public school system is supported by local taxes; these taxes are normally deductible for Federal income tax purposes; and thus, the directly incurred expenses of private education should also be deductible. Whatever the merits of petitioners'

argument as an original proposition, suffice it to say here that Congress has not seen fit to grant such a deduction in section 170 or any other provision of the Internal Revenue Code.

The second issue requires us to decide whether Donald incurred deductible business transportation expenses while driving between his residence and his place of employment. Donald is a commercial airline pilot employed by American Airlines as a captain. During the year in issue he traveled to and from work in his own car. In their 1965 Federal income tax return petitioners deducted $105 as transportation expenses incurred by Donald in traveling to and from work. For these expenses to be deductible it must be shown they were ordinary and necessary expenses incurred by Donald in carrying on his trade or business. Sec. 162(a).

While working Donald was required to have with him a flight kit bag containing, among other things, manuals, maps, and charts. American required that Donald be current with changes in the manuals, maps, and charts, and be knowledgeable as to the contents of this material. However, American did not provide lockable storage space for the kit bag and did not provide office space where Donald could study and post changes to his materials. The requisite studying and posting of materials was done by Donald at his home. Consequently, when going to a flight Donald drove to and from work carrying a 40-pound kit bag.

In addition Donald carried an overnight bag which contained personal items, including civilian clothes, for use during FAA required layovers between departing and returning flights. Of necessity the overnight bag was large enough to accommodate a suit of civilian clothes because American did not permit Donald to wear his uniform during layovers except when in transit between the airport and the hotel. Public transportation to work was not always readily available because Donald worked irregular hours. It does appear, however, that Donald would have driven to work regardless of the necessity to bring his kit bag and overnight bag.

This second issue raises the question of whether a taxpayer driving to work and carrying his tools or equipment is entitled to deduct a portion of his transportation expenses. We see little substantial difference between this case and *Sullivan* v. *Commissioner*, 368 F. 2d 1007 (C.A. 2, 1966), reversing and remanding 45 T.C. 217 (1965), Memorandum Opinion of this Court on remand, affirmed per curiam in an unpublished order (C.A. 2, 1969, 24 A.F.T.R. 2d 69–5053, 69–2 U.S.T.C. par. 9448), certiorari denied 396 U.S. 827 (1969). There it was held that a taxpayer should be allowed to deduct a portion of his costs of driving to work although he would have driven even if he did not have to carry

his tools. The portion deductible was determined to be the amount reasonably allocable to the transportation of the tools. The *Sullivan* case is controlling here for the reason that petitioners resided within the Second Judicial Circuit of the United States when they filed their peition herein. Sec. 7482(b)(1); *Jack E .Golsen*, 54 T.C. 742 (1970), on appeal (C.A. 10, May 4, 1970).

As in *Sullivan* v. *Commissioner*, *supra*, Donald had a bag of equipment which he had to have with him at work and which could not be left behind after work. In addition, on the trips in question Donald also had an overnight bag with him. Donald's kitbag and overnight bag in combination were certainly bulkier and heavier than Sullivan's 32-pound 24- by 18- by 6-inch tool bag.

Having concluded that petitioner is entitled to a partial deduction of his expenses incurred in going to work, we turn to the question of the precise amount of the deduction. Petitioner failed to show that he would not have driven to work absent the necessity to carry his flight kit bag and overnight bag. Hence we must assume that he would have driven to work under any circumstances.

It has been stipulated by the parties that petitioner made 82 round trips in his car from his home to LaGuardia for the purpose of flying and that each round trip covered 84 miles for a total mileage of 6,888 for the year involved. Petitioner claimed $105 as the appropriate portion of his expenses of going to work as being allocable to the cost of carrying his flight kit and overnight bag. Without purporting to make any finding as to the total cost of the trips and without purporting to set forth any standard for allocating the total cost between the personal commuting element and element attributable to carrying his "tools," we merely decide the limited question before us by holding that $105 is a reasonable amount to allocate to the business portion of the total expense.

Our decision on this point is in no way influenced by the fact that Donald wore his uniform while driving to and from work. Had that been the sole reason for his deducting transportation expenses, the deduction would not have been allowed by this Court. American's rules permitted Donald to travel to and from work in uniform. Wearing the uniform was certainly no more troublesome than wearing clothes in general.

Now we turn to the third issue which relates to Donald's interairport travel. During the year in issue Donald flew out of either LaGuardia Airport or John F. Kennedy International Airport. Flights departing one of the airports always returned to that airport except in event of circumstances forcing a deviation. When flights were scheduled out of JFK, Donald would first drive to LaGuardia. When such a flight

returned, Donald would drive to LaGuardia prior to going home. When a flight left one and returned to the other airport American supplied interairport transportation. It was necessary for Donald to stop at LaGuardia, where American had offices, so that he could have contact with the chief pilot and Air Transport Control. At LaGuardia Donald picked up changes for his manuals, maps, and charts, and company correspondence. For this purpose American provided a pickup box for Donald. American would not mail change material and company correspondence to Donald's home.

On brief respondent stated:

As a postscript the Court's attention is called to the fact that there were apparently some noncommuting expenses for travel between airports. To the extent that petitioners have proved such expenses, respondent agrees that they are deductible.

The parties stipulated that Donald made 30 trips of 15 miles. Applying respondent's standard of 10 cents per mile, we find petitioners entitled to deduct $45 for the interairport travel.[2] Petitioners erroneously deducted this item as a part of Donald's claimed educational expenses. It should be clear from the discussion of the facts that the deduction is not being allowed on such grounds.

The final issue for consideration is whether a certain amount expended for transportation by Donald constituted a deductible educational expense. Petitioners, on their 1965 Federal income tax return deducted $236.70 for educational expenses incurred by Donald. The amount must qualify under section 162(a) to be deductible. In this instance it does not, except for that portion representing interairport transportation which was allowed above.

Apparently the bulk of the transportation costs was incurred when Donald drove his car to take part in flight kit inspection, proficiency checks, B or D box programs, American Airlines physical examinations, FAA physical examinations, and union meetings. Transportation to an allegedly educational activity is deductible on the same basis as business transportation provided the costs of the activity, if incurred by the taxpayer, would have constituted educational expenses within the purview of section 162(a). *Cosimo A. Carlucci*, 37 T.C. 695, 702 (1962). It is at this point that petitioners must fail. The evidence does not show that the activities to which Donald traveled constituted education in the sense of acquiring information and knowledge for the purpose of maintaining and improving skills used in Donald's occupation, or for the purpose of meeting express requirements as a

---

[2] Petitioner has not shown he is entitled to a greater amount, and it is respondent's policy to allow a deduction at the rate of 10 cents a mile in these circumstances. Rev. Proc. 66–10. 1966–1 C.B. 622. See *Ernest L. Rink*, 51 T.C. 746, 754 (1969).

condition to Donald's retention by his employer. See *Walter G. Lage*, 52 T.C. 130, 134 (1969).

In his testimony Donald mentioned that some of the travel was to participate in recurrent training. However, no evidence was given as to the nature of this training or its relationship to Donald's occupation. Also, no evidence allocating the total expenditure of $236.70 among the various activities to which Donald traveled appears in the record. There was no showing that the transportation in question was between job locations, or Donald's general area of employment and some other area, rather than between Donald's house and his usual area of employment. Thus, the costs of traveling to the tests and examinations have not been shown to be anything more than ordinary commuting expenses. In this regard we note that Donald on these trips did not carry an overnight bag and that it is not clear as to whether or not he carried his flight kit bag.

Because of concessions and in accordance with the foregoing,

*Decision will be entered under Rule 50.*

Reviewed by the Court.
QUEALY, *J.*, dissents.