Samuel D. and Florence H. Woolsey v. Commissioner.
Woolsey v. Commissioner
Docket No. 7192-70 SC.
United States Tax Court
T.C. Memo 1972-38; 1972 Tax Ct. Memo LEXIS 218; 31 T.C.M. (CCH) 138; T.C.M. (RIA) 72038; February 16, 1972, Filed. Samuel D. Woolsey, pro se, 14 Creekwood Court, Danville, Calif.Jeffrey E. Boly, for the respondent. Memorandum Findings of Fact and Opinion INGOLIA
INGOLIA, Commissioner: Respondent determined a deficiency in petitioners' Federal income tax for 1967 in the amount of $303.46. Concessions having been made, the only issue for decision is whether transportation expenses incurred by the petitioner in traveling between his home and the San Francisco Airport may be deducted under section 162(a). [1]
*219 Findings of Fact The petitioners, Samuel D. and Florence H. Woolsey, were legal residents of Danville, California, at the time the petition herein was filed. They filed their joint Federal income tax return for 1967 with the Internal Revenue Service Center at Ogden, Utah. Samuel D. Woolsey (hereinafter referred to as the petitioner) was employed as a flight engineer by Pan American World Airways in 1967 and prior thereto. He was home based at San Francisco International Airport, which is located about 10 miles south of San Francisco on the San Francisco Peninsula. Each flight assignment flown by the petitioner begins and ends at this airport. As a flight engineer, the petitioner is compensated by Pan Am on a "block to block" basis, i.e., from the moment the plane leaves the departure gate until it arrives at its destination gate. However, the petitioner is contractually obligated to perform numerous duties other than while in flight, including pre-flight and post-flight functions and the maintenance of his personal qualifications and proficiencies. These duties required that he work at home at least one hour a day. In 1967, he was tested monthly by Pan Am and the Federal Aeronautics *220 Agency to insure that he maintained requisite flight skills in both normal and abnormal operations. In performing his duties, it was necessary that the petitioner use and carry back and forth to work with him each day a 5-pound tote bag; a 30-35-pound flight bag measuring 10inchX12inchX16inch containing 6 operating manuals, a slide rule, a small kit of tools, and other miscellaneous items; and, one or two 7-pound manuals. In 1967, the petitioner began work at the airport at 8:45 a.m. and stopped at 3:15 p.m. for approximately 70% of the year. During the remaining 30%, the petitioner's duties required him to be at the airport at various times of the day and night. Throughout the year, the petitioner was subject to "line" flying assignments which depart from and return to the airport at all hours of the day or night. He made 11 such trips during the year. In 1967, the petitioner made 168 round trips from his home to the airport. On 157 occasions, he carried the 5-pound tote bag, the 30-35-pound flight bag, and one or two 7-pound manuals in addition to a 35-40-pound suitcase containing personal luggage. On the remaining 11 occasions, he carried the same equipment except for the 7-pound *221 manuals. The tote bag, the flight bag and its contents, and the manuals were the property of Pan Am and were used by the petitioner daily in performing his duties. Pan Am does not provide storage facilities at the airport for the equipment carried by the petitioner. There are public lockers at the airport at a cost of 25 cents for each 24 hours. The petitioner did not use them because he did not consider such use feasible. When the petitioner first began working at the San Francisco airport in 1966, he lived in San Mateo, California, which is approximately 10 miles south of the airport. His home was located three blocks from a Greyhound Lines-West bus stop from which buses traveled to the airport, without transfer, at 20-minute intervals. The petitioner did not use this transportation because he felt it impractical to carry the equipment to the bus stop and then onto and off of the bus. In November of 1966, he moved to Danville, which is 36 miles east of the airport across the San Mateo bridge in Contra Costa County. The parties stipulated that the petitioner chose Danville after deciding public transportation to the airport was not practical and in light of the fact that he had *222 to transport the equipment back and forth to work each day. They further stipulated that had petitioner worked regular hours on a daily basis, and had it not been necessary for him to carry the equipment, he would not have chosen Danville to live. As to why the petitioner chose Danville rather than some other community in the Bay 140 area, the parties stipulated the petitioner's reasons were personal. In selecting it, the petitioner looked at houses in the entire Bay area. Of the 1,000 pilots and flight engineers employed by Pan Am and based in San Francisco, approximately 50 per cent reside at a distance which is more than 36 miles from the airport. It is possible to travel between petitioner's residence and the airport by public transportation. During 1967, the Airport Bus Service operated buses between downtown San Francisco and the airport. The fare was $1.10 each way. The departure schedule in 1967 was as follows: Between 6:00 a.m. and 10:00 p.m. the buses departed every 20 minutes beginning on the hour. After 10:00 p.m. there were buses at 10:30 p.m., 11:00 p.m., 11:30 p.m., 12: 00 midnight, 1:20 a.m., 3:45 a.m., 4:40 a.m., 5:20 a.m., and again at 6:00 a.m. Bus departures *223 from the airport to San Francisco were scheduled to accommodate flight arrivals. During 1967, the Greyhound commuter buses were operated between San Francisco and the Danville area at the average of one every 37 minutes. Only 4 stopped each way at Danville, some two miles from the petitioner's residence. Another 35 buses stopped in Walnut Creek at a place which is 6 miles from the petitioner's residence. The bus fares from San Francisco to Danville were $1.20 one-way, $2.16 round-trip, and $27.50 for a monthly commutation ticket. From San Francisco to the airport, it was 55 cents each way, $1 round-trip, and $7.50 for a weekly commuter ticket. Ultimate Findings of Fact Petitioner would have used his personal automobile to travel to and from work during 1967, whether or not he had to carry the equipment issued him by his employer, and therefore the expenses incident to such travel are nondeductible commuting expenses. Opinion Section 162 provides that: Sec. 162. Trade or Business Expenses. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * *224 On the other hand, section 262 states that: Sec. 262. Personal, Living, and Family Expenses. * * * no deduction shall be allowed for personal, living, or family expenses. The question presented in this case is whether the petitioner's expenses in going to and from the airport were deductible expenses under section 162(a) because he had to transport tools and equipment necessary to his job or were nondeductible because they represented petitioner's personal commuting expense of going to and from work. While the question is a vexing one, it is by no means novel and this Court has already stated its position. In Robert A. Hitt, 55 T.C. 628 (1971), under facts substantially similar to the instant case, the Court held that: It is a well-accepted rule that the expenses of travel between one's residence and place of employment (i.e., commuting expenses) are nondeductible personal expenses under section 262. Commissioner v. Flowers, 326 U.S. 465 (1946); William L. Heuer, Jr., 32 T.C. 947 (1959), affirmed per curiam 283 F. 2d 865 (C.A. 5, 1960). The petitioners are apparently of the view, however, that because Robert was required *225 by his employer to have his flight bag with him at work, the expense of transporting the flight bag to the airport and back is deductible. We hold that, on the facts of this case, no such deduction is permissible. and further: * * * We conclude and hold that if a taxpayer uses his automobile to commute to work in any and all events, he should not be permitted to deduct any of his traveling expenses since he incurred no expense whatever by reason of transporting the tools of his trade. The entire expense is a commuting expense of a nondeductible personal nature and not occasioned by trade or business necessity. In his concurring opinion, Chief Judge Drennen notes that 2 other cases involving the "commuter rule" were decided on the same day as Hitt. Harold Gilberg, 55 T.C. 611 (1971) and Donald W. Fausner, 55 T.C. 620 (1971). He states that in both Hitt and Gilberg the Court adopted the rule that commuting expenses incurred in traveling between one's home and place of business are nondeductible personal expenses and that if the taxpayer would have driven his car to work in any event, whether because of the distances involved, the lack of other means of getting *226 to his job, or simply because of his own choice, he may not deduct any of the 141 expenses of traveling to and from work in his own car, even though he carries tools or equipment used in his business with him in his car. [2] Judge Drennen further notes that in adopting a different rule in Fausner, this Court was obliged to follow the rule espoused by the Court of Appeals for the Second Circuit in Sullivan v. Commissioner, 368 F. 2d 1007 (C.A. 2, 1966), [3] since appeal from Fausner would lie in that Circuit and the policy of the Tax Court is to follow the rule approved by the controlling Circuit. [4]
*227 In the case before us, the petitioner must establish either that the Ninth Circuit has adopted a position that is different from the holding in Hitt or that, but for the need to transport the flight bag and manuals, he would not have used his automobile between his home and the airport. As to the position of the Court of Appeals for the Ninth Circuit, we could find no case directly in point, although that Court has recognized generally that commuting expenses are nondeductible. Sanders v. Commissioner, 439 F. 2d 296 (C.A. 9, 1971), affirming 52 T.C. 964 (1969). However, on facts almost identical to those present in the instant case, appeal has been taken to the Ninth Circuit from a Memorandum Opinion of this Court which disallowed the claimed deductions as commuting expenses under the rule laid down in Hitt, supra.[5] The appeal is presently pending.
With respect to whether or not the petitioner would have used his automobile but for the necessity of transporting the flight bag and manuals, we believe the record clearly establishes that he would have used his *228 automobile in any event to commute back and forth from home to work. Even when he lived in San Mateo, some 10 miles from his work where public transportation to the airport was convenient, he never used the bus. Had he remained in San Mateo, certainly he would have been able to use the bus at least part of the time. It may be true that use of an automobile was the most convenient mode of travel and would have eliminated the 3-block journey to the bus, but this is true in almost every situation where a commuter uses a bus. In such cases, the choice to use an automobile is a personal one and is not related to the carrying on of any trade or business within the meaning of section 162. Once the petitioner moved from San Mateo to Danville, some 36 miles from his work, it is obvious that the use of public transportation became impractical, if not impossible. Here again however, this was the result of a personal decision made by the petitioner - the same decision any other taxpayer makes when he chooses to live in the suburbs a substantial distance from his job. Petitioner contends that had he been employed at the airport, working regular hours on a daily basis, without the need for carrying *229 the flight bag and manuals, he would not have chosen Danville as his residence. This may all be true, but the fact is that the petitioner's job called for him to work irregular hours at times. He himself states that punctuality was important and that his employer would not tolerate tardiness, therefore he chose to use his automobile rather than public transportation. We believe that in choosing Danville, the petitioner was making a personal choice as to where he wanted to live. Many factors probably played a part in that choice, including the fact that he had to transport the flight bag and manuals back and forth. If the rule were such that we could allocate some portion of the transportation costs to the use of this equipment, we would readily do so in this case. However, since we believe the petitioner would have used his automobile to travel between his home and the airport whether or not he had to carry his flight equipment, under Hitt we must hold that his expenses were nondeductible commuting expenses. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for the respondent. 142 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. In Rev. Rul. 63-100, 1963-1 C.B. 34↩, the Commissioner allows the deduction for the expense of transporting tools only where a taxpayer "would not use his automobile on such trips except for" the reason that the tools are too heavy or cumbersome to be carried otherwise than by car. 3. In Sullivan, the Second Circuit adopted the view that a taxpayer is entitled to deduct that portion of his reasonable driving expenses which is allocable to the transportation of tools or equipment even though the taxpayer would have used his car in any event to go to work had it not been necessary for him to transport his tools. The Seventh Circuit has taken the same view. Tyne v. Commissioner, 409 F. 2d 485↩ (C.A. 7, 1969).
4. Jack E. Golsen 54 T.C. 742↩ (1970).
5. Gregorio Castillo, T.C. Memo. 1971-87↩, on appeal (C.A. 9, June 1, 1971).