ROGER B. MORRISON and SUSAN T. MORRISON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Morrison v. Commissioner
Docket No. 23247-84.
United States Tax Court
T.C. Memo 1987-112; 1987 Tax Ct. Memo LEXIS 108; 53 T.C.M. (CCH) 251; T.C.M. (RIA) 87112; February 24, 1987. *108 Ps directed their stockbroker on Feb. 12, 1980, to transfer stock to their church. Such transfer was effected on the books of the stockbroker on Feb. 25, 1980. Ps received no consideration for such transfer. Ps established a family trust using materials purchased from the promoters of family trust plans. Ps relied entirely on the representations of such promoters regarding the suitability of family trusts and, despite questions, did not obtain advice of an independent expert regarding such trusts. Held: (1) Ps' gift of stock to their church was complete on the date the stock was transferred on the books of the stockbroker; the stock is to be valued as of such date in determining the amount of Ps' charitable contribution. (2) Under the circumstances, Ps' failure to consult independent experts regarding their family trust was unreasonable; addition to tax for negligence sustained. (3) Ps are not entitled to itemized deductions in excess of amounts allowed by the Commissioner. (4) Ps are not entitled to deductions for business expenses. (5) Ps are liable for the addition to tax for failure to file a valid tax return for 1980. (6) Ps are liable for the addition to *109 tax for underpayment of estimated taxes for 1980. Andrew B. Spiegel, for the petitioners. Rosabel I. Seigan, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined deficiencies in, and additions to, the petitioners' Federal income taxes as follows: Additions to Tax
Sec. 6651(a)
Sec. 6653(a)
Petitioner
Year
Deficiency
I.R.C. 1954 [1]
I.R.C. 1954
Roger B. Morrison
1980
$80,639.00
$20,414.00
$4,083.00
Susan T. Morrison
1980
89,583.00
22,396.00
4,479.00
Roger B. and
1981
7,091.00
Susan T. Morrison
Additions to Tax
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6654
Petitioner
I.R.C. 1954
I.R.C. 1954
I.R.C. 1954
Roger B. Morrison
$5,155.00
Susan T. Morrison
5,725.00
Roger B. and
$355.00
50% of interest
Susan T. Morrison
due on $7,091.00
*111 After concessions by both parties, the issues remaining for decision are: (1) Whether the petitioners made a gift of stock to charity on the day they directed their broker to transfer the stock to their church; (2) whether the petitioners are entitled to claim itemized deductions for 1980 and 1981 in excess of the amounts allowed by the Commissioner; (3) whether the petitioners are entitled to claim deductions for business expenses in 1980 and 1981; (4) whether the petitioners are liable for the addition to tax for negligence under section 6653(a) for 1980 and section 6653(a)(1) and (2) for 1981; (5) whether the petitioners are liable for the addition to tax under section 6651(a) for 1980 for failure to file a valid return; and (6) whether the petitioners are liable for the addition to tax for under-payment of estimated tax under section 6654(a) for 1980. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Roger B. and Susan T. Morrison, husband and wife, resided in Glenview, Illinois, when they filed the *112 petition in this case. On or before April 15, 1981, they mailed to the Internal Revenue Service Center in Kansas City, Missouri, a document which purported to be their joint Federal income tax return for 1980. The Morrisons timely filed their joint Federal income tax return for 1981 with the Internal Revenue Service Center in Kansas City, Missouri. The document which purported to be the petitioners' 1980 Form 1040 was dated April 15, 1981, and signed by both Mr. and Mrs. Morrison and by a paid tax return preparer. In the declaration section of such document, the phrase "Under penalties of perjury" was obliterated. On such document, the Morrisons reported interest income of $9,890, trust management fees of $7,500, and $1,260 in income from a rental property and from a trust. The Morrisons' Federal income tax return for 1981 was not signed by a paid preparer. The jurat was not deleted on such return. On their 1981 return, the Morrisons reported business income of $2,778 and $2,100 in income from a trust. In 1965, the petitioners joined several other families to form the Church of Christian Liberty (the church). Such church is an independent evangelical church, led by Reverend *113 Paul Lindstrom, which serves the suburbs northwest of Chicago. The Morrisons have been active supporters of the church since its founding. They have regularly attended church services and Bible study classes and have volunteered their time to help maintain church buildings. They have also made regular financial contributions to the church. In 1980, the church had approximately 100 member families. In early February 1980, Mrs. Morrison held 500 shares of Asarco Inc. (Asarco) common stock in an account maintained by her brokerage firm, Drexel Burnham Lambert, Inc. (Drexel). Her account executive at Drexel was her brother, Thomas R. Teegarden. The Morrisons paid a total of $16,206.33 for the Asarco stock. On February 12, 1980, Mrs. Morrison phoned Mr. Teegarden and instructed him to transfer the 500 shares of Asarco stock from her account to an account maintained by Drexel for the church. Drexel's policy required Mr. Teegarden to secure written authorization from Mrs. Morrison before such shares could be transferred to the church account. On February 12, 1980, Mr. Teegarden sent a form authorization letter to Mrs. Morrison for her signature. The closing price of the Asarco *114 stock on the New York Stock Exchange on February 12, 1980, was $57.25 per share. Upon receiving the signed letter back from Mrs. Morrison a few days later, Mr. Teegarden sent the letter to Drexel's New York office for posting. The transfer was effected on Drexel's records on February 25, 1980, when the closing price of the Asarco stock was $52.25 per share. Mrs. Morrison could have revoked her authorization at any time prior to the entry of the transaction in New York. The Morrisons received no consideration from the church for the transfer of the stock. As a matter of policy, the church sells stock donated to it as soon as possible. In keeping with such policy, on February 12, 1980, Mr. Teegarden was directed to sell the Asarco stock. The record is unclear as to who authorized the sale. The sale was completed on February 20, 1980, at a price of $57.00 per share. Drexel's policy permitted a customer to sell stock it did not yet own, as long as the customer's account executive was satisfied that the customer would be able to deliver the stock to Drexel to be transferred to the buyer. Mr. Teegarden considered the letter of authorization from Mrs. Morrison to be sufficient evidence *115 that the church would be able to make such delivery. In 1978, the petitioners established the Roger B. Morrison Family Trust. They purchased the materials used to form their family trust from Family Estate Publishers (FEP) for approximately $13,000. Before purchasing such materials, the Morrisons attended a seminar presented by representatives of FEP. At the seminar, such representatives described the mechanics of forming a family trust plan and the tax benefits enjoyed by plan purchasers. Although the Morrisons did not know what the credentials of such representatives were, they believed that they "had the legal knowledge to do what they were doing." The Morrisons relied entirely on the statements of the representatives regarding the suitability of family trust plans; they did not obtain the advice of an independent expert. In January 1981, the Morrisons attended another seminar given by FEP, at which an attorney for FEP reaffirmed the legitimacy of the family trust plans for Federal income tax purposes. The attorney acknowledged that courts had struck down some family trust plans, but he maintained that these plans had been "misused" by their purchasers and that such plans *116 were different from the trust plans sold by FEP. The petitioners filed Federal fiduciary income tax returns for the Roger B. Morrison Family Trust for 1980 and 1981. On both the 1980 and 1981 returns, the Morrisons reported income from dividends, distributions from a trust established by Mrs. Morrison's mother, and capital gains and losses. They also reported "commission" income of $39,675 in 1980 and $5,000 in 1981. On the 1980 return, they deducted as expenses the cost of utilities, insurance, telephone service, and maintenance that were at least partially attributable to their personal residence. In 1982 or 1983, the petitioners received a letter from the attorney for FEP, in which the attorney implied that the family trust plans were invalid for tax purposes. Partly because of such letter, the Morrisons decided to file "amended" Federal income tax returns for 1980 and 1981. Such "amended" returns were filed in May 1984. On the amended returns, the petitioners combined the income and expenses previously reported on their original Forms 1040 and the fiduciary income tax returns of the family trust. On the amended return for 1980, the Morrisons also claimed as itemized *117 deductions amounts spent for taxes and interest. Further, they claimed a charitable contribution of $28,625 for the transfer of the Asarco stock to the church. They also took a deduction for investment expense of $771. On the amended return for 1981, the Morrisons again claimed as itemized deductions expenditures for taxes and interest. They claimed deductions for cash contributions of $300 and tax return preparation fees of $200. Finally, they took a deduction for investment expense of $1,913. On a Schedule C attached to the amended return for 1980, Mr. Morrison claimed to operate a printing business as a sole proprietorship. He reported gross receipts from such business of $39,675. He also claimed various deductions purportedly incurred by such business. On the Schedule C attached to the amended return for 1981, Mr. Morrison reported gross receipts of $26,500 from his printing business and deducted various expenses with respect to such business. The petitioners filed another amended return for 1981 on Form 1040X, on which they reported income and expenses from a sales business purportedly operated by Mrs. Morrison as a sole proprietorship. The petitioners made no estimated *118 tax payments to be applied against their 1980 tax liability. The Morrisons' printing business was incorporated in the State of Illinois in 1967 under the name "Printing While You Wait, Inc." Mr. Morrison served as the corporation's president during the years in issue. The record contains no information regarding the corporation's financial condition during the years in issue. Although Mrs. Morrison claimed that such corporation filed Federal income tax returns for the years in issue, such returns were not introduced into evidence. Mr. Morrison graduated from high school and spent 2 years in the United States Air Force pilot training program. Mrs. Morrison holds a master's degree in nutrition from the University of Illinois. On April 14, 1984, the Commissioner issued three notices of deficiency to the petitioners. Since the Commissioner took the position that the Form 1040 initially filed by the petitioners for 1980 did not constitute a valid return, he issued separate notices to each petitioner with respect to such year. However, the Commissioner has now stipulated that the Morrisons are entitled to compute their 1980 tax liability using the married, filing jointly status, *119 with a total of six personal exemptions. In the notices relating to 1980, the Commissioner determined that each petitioner was taxable on the entire income reported by the family trust in that year. In addition, he determined that the "commission" income reported by the Morrisons on Schedule C constituted net earnings from self-employment and that they were liable for self-employment taxes on such income, without reduction for the business expenses claimed by them. Further, he disallowed the itemized deductions claimed by the Morrisons. He also determined that each petitioner was liable for the additions to tax under section 6651(a) for failure to file a return, under section 6653(a) for negligence, and under section 6654 for underpayment of estimated taxes. In the notice issued to Mrs. Morrison, he determined that she was taxable on $9,890 in interest income attributable to the sale of U.S. Savings Bonds. The Commissioner also issued a notice of deficiency to Mr. and Mrs. Morrison jointly for 1981. Such notice was based on the original Form 1040 for 1981 filed by the petitioners in 1982; in such notice, the Commissioner disregarded the "amended" Form 1040 filed by the petitioners *120 in May 1984. In the notice, he again determined that the Morrisons were taxable on the income reported by the family trust. He disallowed for lack of substantiation deductions for car and truck expenses of $2,700 and supplies of $49. He disallowed the itemized deductions claimed by the Morrisons. Further, he determined that the Morrisons were liable for additional self-employment tax of $979. Finally, he determined that they were liable for the additions to tax for negligence under section 6653(a)(1) and (2). OPINION The first issue for our decision is whether the petitioners are entitled to a charitable contribution deduction of $28,625 for a gift of stock to the church in 1980. It is undisputed that the church qualifies as an eligible organization under section 170(c). However, the Commissioner alleges that the Morrisons received some unspecified financial benefit from the church as a result of the transfer of the stock and concludes, therefore, that such transfer did not qualify as a bona fide gift. It is well settled that a taxpayer is not entitled to a deduction for a transfer *121 of property to a charity to the extent he receives a financial benefit from such transfer. See, e.g., Stephenson v. Commissioner,79 T.C. 995, 1003 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Sutton v. Commissioner,57 T.C. 239, 243 (1971); Fausner v. Commissioner,55 T.C. 620, 624 (1971). However, in this case, both Mrs. Morrison and Rev. Lindstrom offered credible testimony which leads us to conclude that the petitioners received no direct or indirect financial benefit from the gift of Asarco stock, other than the charitable contribution deduction at issue. The Morrisons received no consideration from the church as a result of the transfer. There is no evidence that part of the sales proceeds was returned to the Morrisons when the church sold the stock. The petitioners received no monthly stipend from the church, nor did they receive any allowance for their children's parochial school tuition. Therefore, in our judgment, the transfer of the stock to the church constituted a bona fide gift. The Commissioner argues, in the alternative, that the amount of any charitable contribution deduction should be limited *122 to the value of the Asarco stock on February 25, 1980, the date on which Drexel transferred the shares to the church's account. He notes that Mrs. Morrison could have revoked her authorization to transfer such shares at any point prior to posting in Drexel's New York office. Therefore, he contends that the gift was not complete until February 25, since Mrs. Morrison maintained control over the shares up until that date. For purposes of section 170, a gift of stock is complete when delivery of the properly endorsed stock certificate is effective. The regulations state that "[i]f the donor delivers the [endorsed] stock certificate to his bank or broker as the donor's agent * * * for transfer into the name of the donee, the gift is completed on the date the stock is transferred on the books of the corporation." Sec. 1.170A-1(b), Income Tax Regs. While the regulations contemplate the delivery of a stock certificate properly endorsed by the donor, the petitioners' arrangement is closely analogous. The Asarco shares were registered in street name; thus, no endorsement by Mrs. Morrison was required. The process of transferring the shares was begun upon *123 receipt by Drexel of the letter of authorization from Mrs. Morrison. This Court has, on prior occasions, addressed the issue of the timing of a deduction for a gift of stock to charity. In Londen v. Commissioner,45 T.C. 106 (1965), a donor of stock delivered an executed stock certificate and instructed his agent on December 30, 1959, to transfer the stock to a charity. Such transfer was not effected until January 13, 1960. This Court held that the gift was not complete until January 13 and therefore was deductible in 1960. Thus, the date on which a donor directs his agent to transfer stock to a charity is not determinative of when a gift is complete. Rather, delivery of a gift of stock is complete when the stock is actually transferred, for only then is the stock placed beyond the donor's control. In this case, such transfer occurred on February 25, 1980. We conclude that the gift of the Asarco stock is to be valued as of that date. The petitioners claim that Mrs. Morrison relinquished control over the stock on February 12, when she directed Mr. Teegarden by phone *124 to transfer the shares to the church. They argue that the fact that Mr. Teegarden undertook to sell the stock on February 12 shows that he was satisfied that the transfer would be completed and that the church would be able to deliver the shares timely after the sale. Whatever Drexel's policy may be with regard to a sale of stock not yet owned by the seller, such policy is not controlling for Federal tax purposes. [2] There is no evidence that, had Mrs. Morrison countermanded her instructions to transfer the stock, Mr. Teegarden would have refused to halt the transfer. The next issue for our decision is whether the petitioners are entitled to the itemized deductions claimed on their amended 1980 and 1981 returns, in excess of the amounts allowed by the Commissioner and other than the deduction *125 taken for the gift of stock to the church. The Morrisons were able to substantiate at trial deductions for taxes, interest, and tax return preparation fees, and the Commissioner stipulated to such amounts. However, remaining in dispute are deductions for a charitable contribution of $300 in 1981 and investment expenses of $771 in 1980 and $1,913 in 1981. The petitioners bear the burden of proving that the Commissioner's disallowance of the itemized deductions claimed by them is erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure.[3] They claim that they gave records which support the deductions in dispute to a CPA who prepared the returns and that such records were lost when he attempted to return them by mail. The fact that their records were allegedly lost in the mail does not relieve the Morrisons of their burden of substantiating the deductions claimed by them. Seckel v. Commissioner,T.C. Memo. 1974-170. The Morrisons have made no attempt to show that they are entitled *126 to the charitable contribution of $300 claimed by them in 1981. For such reason, we hold that they have failed in their burden of proof and sustain the Commissioner's determination with respect to this item. The deductions for investment expenses claimed in 1980 and 1981 are attributable to expenditures for magazines, newsletters, and other materials received by the Morrisons and to the cost of seminars and educational courses attended by them. Ordinarily, such expenses are not deductible, unless they are incurred for the production or collection of taxable income. Sec. 1.212-1(a)(1), Income Tax Regs. Mrs. Morrison admitted that the amounts deducted included expenditures for publications used to manage property owned by the family trust and for seminars presented by FEP relating to family trust management. In our judgment, such trust-related expenditures were paid to secure advice on how to avoid the recognition of taxable income. Such expenses were not incurred for the production or collection of taxable income and are therefore not deductible under section *127 212. See Morrison v. Commissioner,81 T.C. 644, 652 (1983); Contini v. Commissioner,76 T.C. 447, 453-454 (1981). Mrs. Morrison testified that only a portion of the expenditures were for publications used to manage trust property. The petitioners argue that expenditures for non-trust-related publications should be deductible. However, there is no evidence in the record concerning either the amount or the nature of the publications purchased for non-trust-related purposes. Therefore, we hold that the petitioners have failed in their burden of proving that they are entitled to any of the deductions for investment expenses claimed in 1980 and 1981. The next issue for our decision is whether the petitioners are entitled to deductions for business expenses claimed on their amended returns for both 1980 and 1981. The Commissioner determined that the petitioners were not entitled to such deductions for expenses relating to the printing business carried on by Mr. Morrison in 1980 and 1981 and to deductions for car expenses and supplies in connection with a sales business purportedly carried on by Mrs. Morrison in 1981. The petitioners have only *128 challenged the Commissioner's determination with respect to the expenses of Mr. Morrison's printing business. The Morrisons bear the burden of proving that they are entitled to deductions claimed by them. Rule 142(a). The record reveals that the printing business operated by the petitioners was incorporated in 1967, under the name Printing While You Wait, Inc. Nevertheless, on the amended returns, Mr. Morrison claimed to have operated such business as a sole proprietorship. He reported "commission income" from such business of $39,675 in 1980 and $26,500 in 1981. At trial, Mrs. Morrison admitted that these amounts were received from the corporation. However, she claimed that Mr. Morrison entered into an agreement with such corporation under which he was to be treated as an independent contractor with respect to the corporation, rather than as an employee. She admitted that he served as an employee of the corporation before he entered into such agreement. The Commissioner argues that the agreement between Mr. Morrison and Printing While You Wait, Inc., was a sham and should not be given effect. On the record before us, we agree with the Commissioner's position. There is *129 no evidence that Mr. Morrison's services on behalf of the business or his relationship with such business was in any way changed by the agreement. What had previously been salary does not become commission income or gross receipts from operation of a business solely by virtue of an agreement which merely purports to change the description of the relationship. We conclude that the payments by Printing While You Wait, Inc., to Mr. Morrison were properly reportable as salary and that whatever expenses associated with the printing business and incurred in 1980 and 1981 were deductible by the corporation. Therefore, we hold that the petitioners are not entitled to deduct such expenses on their joint returns for the years in issue. [4]
*130 The next issue for decision is whether the petitioners are liable for the addition to tax for negligence under section 6653(a) for 1980 and section 6653(a)(1) and (2) for 1981. The petitioners are liable for the addition to tax for negligence if any part of the underpayment of tax is due to negligence or intentional disregard of rules and regulations. The Morrisons bear the burden of proving that the Commissioner's determination that they are subject to the addition for negligence is erroneous. Rule 142(a); Foster v. Commissioner,80 T.C. 34, 237 (1983), affd. 756 F.2d 1430 (9th Cir. 1985). The Commissioner argues that the petitioners are liable for the negligence addition because Mr. Morrison deliberately deleted the phrase "Under penalties of perjury" from the 1980 return and because the petitioners attempted to conceal their true income through the use of the family trust device in both 1980 and 1981. We hold that the Morrisons acted unreasonably with respect to their family trust. For such reason, we conclude that they are subject to the addition *131 to tax for negligence for 1980 and 1981. Accordingly, we need not decide whether, under the facts of this case, the striking of the jurat from the 1980 Form 1040 resulted in an underpayment of tax for purposes of section 6653(a). [5]
The petitioners argue that they are not subject to the negligence addition because they relied in good faith on the advice of the representatives of FEP before purchasing their family trust plan and preparing their tax returns. The Morrisons attended seminars presented by FEP. Mrs. Morrison testified that an attorney associated with FEP was present at such seminars and assured them that the family trusts offered legitimate tax advantages. However, she conceded that they neither sought nor received advice regarding the suitability of the family trusts from an attorney or accountant who was independent of FEP. A negligence addition may be avoided if the taxpayers can show that they relied in good faith on the tax advice *132 of a competent attorney or accountant. See, e.g., Otis v. Commissioner,73 T.C. 671, 675 (1980); Conlorez Corp. v. Commissioner,51 T.C. 467, 475 (1968). However, the events surrounding the purchase of the family trust plans were such that a prudent taxpayer would have sought advice from an independent expert before investing or before continuing to rely upon the representations of FEP. Although the petitioners paid $13,000 for the materials used to establish their family trust, they never conducted an independent investigation to determine whether their investment would reap the benefits expected by them. Further, the Morrisons were aware, at least by the time that they filed their returns for 1980 and 1981, that the tax benefits claimed by other family trusts had been disallowed by decisions of this Court and by revenue rulings issued by the IRS. Yet, they accepted at face value the assurances of the representatives of FEP that the trusts offered by FEP were somehow different from the trusts which had been found invalid and that the FEP trusts would therefore withstand challenges by the IRS. Although Mrs. Morrison described Richard McKenzie *133 as one of the "main persons" involved in FEP, she did not know whether he was an attorney or indeed what his credentials were. The Morrisons chose to ignore these signs that their family trust was not all it was represented to be. Therefore, under the circumstances, we conclude that the failure to obtain advice concerning the purported tax benefits of family trusts from an independent expert was unreasonable. For such reason, we hold that the Morrisons are liable for the addition to tax for negligence. The next issue for our decision is whether the petitioners are liable for the addition to tax under section 6651(a) for failure to file timely a valid Federal income tax return for 1980. Section 6651(a) provides for an addition to tax of 5 percent of the tax liability for each month that a valid return is not filed, to a maximum of 25 percent of such tax. Such addition may be avoided if the failure to file is shown to be due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1). The Commissioner noted that the phrase "Under penalties of perjury" was deleted on the *134 document which purported to be the petitioners' joint Federal income tax return for 1980. He determined that such document did not constitute a return within the meaning of section 6065, which provides that a return, to be valid, must "contain or be verified by a written declaration that it is made under the penalties of perjury." Mr. Morrison admitted at trial that he drew a line through the jurat because he thought that one could only commit perjury while testifying under oath in a court of law. Therefore, he believed that it was inappropriate for the jurat to appear on a tax form. He testified that he did not delete the jurat on the 1981 return because he was informed "that you really should not do that." The petitioners first argue that section 6651 does not provide for a failure to file addition on an individual who files a return, but who has deleted the "Under penalties of perjury" provision. However, on a number of occasions, this Court has sustained such an addition for the failure to include the jurat, and we so hold. See, e.g., Cupp v. Commissioner,65 T.C. 68 (1975), affd. 559 F.2d 1207 (3d Cir. 1977); Vaira v. Commissioner,52 T.C. 986 (1969), *135 revd. on other grounds 444 F.2d 770 (3d Cir. 1971). [6]
The petitioners further argue that the section 6651 addition to tax should not be imposed because Mr. Morrison's mistaken belief as to the legal effect of deleting the crucial phrase constitutes reasonable cause for their failure to file a valid return. The Morrisons bear the burden of proving such reasonable cause. Baldwin v. Commissioner,84 T.C. 859, 870 (1985). To establish reasonable cause, the petitioners must show that they used ordinary business care and prudence in preparing and filing their return. Sanders v. Commissioner,225 F.2d 629 (10th Cir. 1955), affg. 21 T.C. 1012 (1954). We are not persuaded that Mr. Morrison exercised ordinary care when he deleted the jurat. Although the Morrisons hired an expert to prepare their return, they failed to ask *136 him what the legal effect of deleting the jurat would be. In our judgment, Mr. Morrison's mistaken belief as to the consequences of his action, without more, does not constitute reasonable cause for the petitioners' failure to file a valid return. The final issue for decision is whether the petitioners are liable for the addition to tax under section 6654(a) for underpayment of estimated tax for 1980. Such addition is mandatory unless the Morrisons can bring themselves within one of the "safe harbor" exceptions found in section 6654(d). There is no reasonable cause or good faith exception. Sec. 1.6654-1(a), Income Tax Regs.; Grosshandler v. Commissioner,75 T.C. 1, 20-21 (1980). The petitioners have made no attempt to show that they fall within a safe harbor exception. Therefore, we conclude that they are liable for the addition to tax under section 6654(a). Because of concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. Mr. Teegarden testified that he considered the letter from Mrs. Morrison to be sufficient authority for the sale. However, apparently, he did not have that letter in hand when he undertook to make the sale for the church on Feb. 12, 1980, since he only requested the letter on that day, but whether he had the authority to make the sale on that day is a matter between him and Drexel.↩
3. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩
4. We observe that the Commissioner, in his notices of deficiency, determined that the commission income reported by the petitioners in 1980 and 1981 constituted net earnings from self-employment and that the petitioners were liable for self-employment tax on such income. The parties have not addressed such determination in this proceeding. However, in light of the Commissioner's argument on brief that Mr. Morrison was in fact an employee of Printing While You Wait, Inc., and that payments received from such corporation were reportable as salary, we conclude that he has abandoned his intention to claim self-employment tax.↩
5. Compare Beard v. Commissioner,82 T.C. 766, 777 (1984), affd. per curiam 793 F.2d 139↩ (6th Cir. 1986).
6. See also United States v. Moore,627 F.2d 830, 834 (7th Cir. 1980); Blanchard v. Commissioner,T.C. Memo. 1977-352, affd. 579 F.2d 641↩ (5th Cir. 1978).