ARNOLD T. AND RAE ANDERSON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2880–68.    Filed February 16, 1971.

*Leonard L. Stark*, for the petitioners.

*Jay S. Hamelburg* and *Stephen B. Zorick, Jr.*, for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency of $1,110.67 in petitioners' income taxes for the taxable year 1965. Because of certain concessions by the respondent, the only issue remaining for decision concerns the deductibility under section 162(a) [1] of certain transportation expenses incurred by one of the petitioners while traveling between his home and his job.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners Arnold T. Anderson and Rae Anderson are husband and wife who had their legal residence at Huntington, N.Y., at the time the petition herein was filed. For their taxable year 1965, their joint return was timely filed with the district director of internal revenue, Brooklyn, New York.

---

[1] All references herein are to the Internal Revenue Code of 1954, as amended.

During 1965, petitioner Arnold T. Anderson (hereinafter Arnold) was an airline pilot employed by Pan American World Airlines. He piloted Pan Am flights to various parts of the world. For the most part, Arnold had off-duty periods during layovers on such flights. On each of these flights, Arnold was required to carry a flight kit which contained the following: Two manuals on the operation of the aircraft; two manuals which contained landing information, air traffic control data, and navigational aids; a portable computer; and additional equipment such as navigational equipment, oxygen masks, and a flashlight. It was also necessary for him to carry certain clothing and personal effects for use while not flying the aircraft. He was required to wear his uniform while on duty. The amount and type of needed clothing varied, depending upon the geographic destination of the flight and the layover prior to the next or return flight.

The weight of the flight kit was about 30 pounds, and the weight of the necessary personal effects varied between 35 and 45 pounds. The flight kit was about the size of a large briefcase, and Arnold used a two-suiter suitcase for his personal effects. No storage facilities were provided by Pam Am for any of the equipment Arnold was required to carry on flights.

In 1965, Arnold made 40 round trips from his home in Huntington, N.Y., to John F. Kennedy International Airport, where his outgoing flights began and his return flights terminated. For all of these trips he used his personal automobile, although alternative transportation was available—by taxi from his home to the Huntington railroad station, by rail from that station to the Jamaica railroad station, and by bus from the latter station to the airport. No form of such transportation other than taxi was available between his home and the Huntington railroad station—a distance of 8 miles.

The distance between Arnold's home and the airport was approximately 45 miles and he calculated his transportation expenses by using a standard of 10 cents per mile. The cost of alternative transportation for a one-way trip between his home and the airport would have been as follows: $4 to $5, taxi; $1.80, railroad fare; and $0.25, bus fare.

#### ULTIMATE FINDINGS OF FACT

Arnold would have driven to the airport even if he had not been required to carry his flight kit and personal belongings.

The flight kit and bag containing required personal effects were too heavy and bulky for Arnold to have carried them by alternative transportation.

OPINION

We are again required to determine the flight path to be followed in order to reach the celestial home of that knotty issue of taxation—to what extent may a deduction be taken for transportation expenses between an airline pilot's home and the airport from which he flies? *Donald W. Fausner*, 55 T.C. 620 (1971); *Robert A. Hitt*, 55 T.C. 628 (1971).[2] In this case, we have the Second Circuit Court of Appeals as our copilot. *Sullivan v. Commissioner*, 368 F. 2d 1007 (C.A. 2, 1966).

Petitioners rest their case on the proposition that Arnold's situation falls within the ambit of Rev. Rul. 63–100, 1963–1 C.B. 34, which we approved in *Harold Gilberg*, 55 T.C. 611 (1971). That ruling sets up two tests for the deduction of automobile expenses where a taxpayer is required to transport materials necessary to carry on his business activities: (1) The materials must be too bulky (or presumably too heavy) to be carried otherwise, i.e., by alternative transportation, and (2) the taxpayer would not have used his automobile except for that reason.

As our findings of fact show, Arnold met the first test but not the second. In this connection, a few comments are in order. Concededly, Arnold testified that he disliked driving and that the only reason he drove was because of the heavy gear. But we are not automatically bound by this testimony; we are entitled to evaluate it in light of all the other facts and circumstances in the record. *Fleischer v. Commissioner*, 403 F. 2d 403, 406 (C.A. 2, 1968), affirming a Memorandum Opinion of this Court; *National Fireworks v. Commissioner*, 243 F. 2d 295, 297 (C.A. 1, 1957); *Archer v. Commissioner*, 227 F. 2d 270, 273 (C.A. 5, 1955). Particularly in light of the irregularity of Arnold's traveling hours, the necessity of using three modes of alternative transportation which had their own built-in complexities, and the distance between Arnold's home and the airport, we have concluded, based on the record as a whole, that Arnold would have in any event used his automobile to travel between his home and the airport.

With respect to the characterization of the materials which Arnold carried, we see no distinction between the instant situation and that which obtained in *Donald W. Fausner*, *supra*, or, for that matter, in *Sullivan v. Commissioner*, *supra*. We are not inclined, as respondent suggests, to focus solely on the flight kit alone and totally to ignore the combined impact of the flight kit and the two-suiter in which Arnold carried necessary personal effects. Such a dissection in order to determine the applicability of the bulk (or weight) test would involve

---

[2] See also *Neil M. Kelly*, T.C. Memo. 1964–73; *Clarence H. O'Donnell*, T.C. Memo. 1962–114; *Robert H. Bodholdt*, T.C. Memo. 1961–87.

an unwarranted judicial involvement in minutiae. We are not prepared to dance on the head of that pin. The same can be said of respondent's attempt to distinguish, on the basis of considering the flight kit alone, between the 40 pounds in *Fausner*, the 32 pounds in *Sullivan*, and the 30 pounds herein.

We return to the basic issue before us. Since petitioner has failed to satisfy the second test established by Rev. Rul. 63–100, *supra*, our independent judgment would dictate that we deny him any deduction whatsoever. *Robert A. Hitt, supra; Harold Gilberg, supra*. But our capacity for independent judgment herein is severely restricted because an appeal in this case lies to the Second Circuit Court of Appeals. *Jack E. Golsen*, 54 T.C. 742 (1970), on appeal (C.A. 10, May 4, 1970). For that reason alone, we hold that petitioners are entitled to some deduction for Arnold's use of the automobile to travel between his home and the airport. *Sullivan* v. *Commissioner, supra; Donald W. Fausner, supra*. Thus, the only question remaining for decision is the measure of that deduction.

Petitioners, having based their position on compliance with Rev. Rul. 63–100, *supra*, claimed a deduction equal to all the automobile expenses.[3] Respondent, maintaining that Arnold's situation was different from that of the taxpayer involved in *Sullivan* on the ground that Arnold could have carried his materials on alternative transportation, would deny petitioner any deduction. Thus, neither party offered any suggestions as to how the expenses might be allocated if we decided that an allocation was required. Similarly, the Court of Appeals in *Sullivan*, which we have found to be controlling herein, offered no formula for the allocation it mandated, although it explicitly recognized that the expense involved in cases such as this is necessarily a hybrid of deductible business expense and nondeductible personal commuting expense. See *Sullivan* v. *Commissioner*, 368 F. 2d at 1008. But the absence of guidance does not relieve us from the responsibility of decision. See *Tyne* v. *Commissioner*, 409 F. 2d 485, 486 (C.A. 7, 1969). Clearly, *Sullivan* does not permit us to discharge that responsibility by holding for the respondent simply on the basis that petitioner has not satisfied his burden of proof. Moreover, in view of the inherent difficulty in allocating an expense which simultaneously serves a dual purpose (see *Harold Gilberg, supra*), we see no purpose to be served in affording the parties the opportunity to present further evidence, beyond that already contained in the record herein with respect to the cost of alternative transportation.

---

[3] No proof of actual expenses was presented herein, petitioners relying instead upon the imputed 10-cents-per-mile formula permitted under Rev. Proc. 64–10, 1964–1 C.B. (Part 1) 667 (increased to 12 cents per mile for years commencing after the taxable year 1969 by Rev. Proc. 70–25, 1970–2 C.B. 506. See *J. Bryant Kasey*, 54 T.C. 1642, 1650 (1970).

In the three decided cases in which we have been required to make an allocation, we have done so without elaborating on the formula which provided the basis for our decision. *Donald W. Fausner, supra; John J. Tyne, Jr.,* T.C. Memo. 1970–303; *Lawrence D. Sullivan,* T.C. Memo. 1968–144. In none of these cases was there evidence as to what it would have cost the taxpayer to travel by means of alternative transportation sufficient to enable us to make adequate findings in this regard. In this case probative evidence was submitted and our findings of fact reflect such evidence. In *Robert A. Hitt, supra,* we articulated a guideline for allocation: "A deduction for transporting heavy, bulky, unwieldly and cumbersome tools and equipment should be allowed only to the extent that the transporting of such items causes a taxpayer to incur expenses above and beyond those he would otherwise incur in commuting." See 55 T.C. at 633. See also *Tyne* v. *Commissioner, supra.* We do not regard the mandate of the Second Circuit Court of Appeals in *Sullivan* that a taxpayer "ought to be allowed to deduct that portion of his reasonable driving expenses which is allocable to the transportation of tools" (see 368 F. 2d at 1008) as being inconsistent with this guideline.

We realize that this guideline was explored by respondent in *John J. Tyne, Jr., supra,* and rejected because of difficulties in situations where no alternative means of transportation were available. In *Tyne,* we determined that, *in the absence of probative evidence as to a better method,* a 50-50 allocation should be sustained. We think it would be inappropriate, if not unjustified, for us to adopt a similar allocation herein where such probative evidence is available. When we did so in an earlier stage of *Tyne,* we were directed by the Seventh Circuit Court of Appeals to afford the taxpayer the opportunity to prove that he was entitled to a more favorable allocation. *Tyne* v. *Commissioner, supra.* Nothing in that decision indicates that it was to be operative only when such proof would benefit the taxpayer.

We are not unaware of the problem which inheres in attempting to apply the mandate of *Sullivan* on a case-by-case basis. Indeed, this is one of the reasons why we opted for the formula established by Rev. Rul. 63–100, *supra.* See *Harold Gilberg, supra; Robert A. Hitt, supra.* Perhaps if the view of the Second and Seventh Circuit Courts of Appeals ultimately becomes an unassailable rule of law, respondent will be able to develop an administratively convenient regulation which will receive judicial blessing. Cf. *United States* v. *Correll,* 389 U.S. 299 (1967). In the meantime, we have no choice, distasteful as it may be, but to deal with the record before us in each case which arises within those two circuits.

One further problem remains. Respondent, in computing the aggregate cost of alternative transportation to Arnold, includes the cost of a taxi between his home and the Huntington railroad station and,

by so doing, asserts that petitioners should be denied any deduction because such aggregate cost exceeds the claimed automobile expense. We think that, under any circumstance, Arnold would have used his automobile for travel between his home and the Huntington station in order to avoid the excessive cost of a taxi. Accordingly, we consider respondent's approach utterly unreasonable and we therefore reject it in favor of a 10 cents-per-mile allowance for the 8 miles involved. On this basis, Arnold's cost of alternative transportation would have been—

| | |
|---|---|
| Home to Huntington railroad station | $0. 80 |
| Huntington to Jamaica railroad station | 1. 80 |
| Bus to airport | 0. 25 |
| | 2. 85 |

Arnold's automobile expense from his home to the airport was, for the purposes of this case, $4.50. Since he made 80 single trips, he is entitled to deduct 80×$1.65 (the excess of $4.50 over $2.85), or $132.

*Decision will be entered under Rule 50.*