Donald W. and Anita C. Fausner v. Commissioner.
Fausner v. Commissioner
Docket Nos. 4754-69, 5590-69.
United States Tax Court
T.C. Memo 1971-277; 1971 Tax Ct. Memo LEXIS 59; 30 T.C.M. (CCH) 1187; T.C.M. (RIA) 71277; October 28, 1971, Filed Donald W. Fausner, pro se, 2025 Southridge Drive, *60 Denton, Tex.John W. Dierker, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: In these consolidated cases the respondent determined the following Federal income tax deficiencies against the petitioners: Year
Amount
1966
$1,424.99
1967
3,699.68
Concessions have been made by the parties and will be given effect in the Rule 50 computations. Eight issues, however, remain for decision. They are: (1) Whether petitioners are entitled to an additional deduction for medicine and drugs; (2) whether petitioners are entitled to a deduction for the cost of the husband's transportation between his residence and place of work; (3) whether petitioners are entitled to a deduction for the cost of certain insurance policies; (4) whether petitioners are entitled to a deduction for the cost of their son's dress uniforms; (5) whether petitioners are entitled to a deduction for the cost of certain items of clothing and equipment used by the husband in connection with his job as an airline pilot; (6) whether petitioners are entitled to an additional deduction for telephone expenses; (7) whether petitioners are entitled to a *61 deduction in the amount of $141.20 for an alleged charitable contribution; and (8) whether petitioners are entitled to a deduction for the cost of a typewriter and books purchased by the husband. Findings of Fact The parties have stipulated certain facts. These stipulations and the exhibits attached thereto are incorporated herein by this reference. Donald W. Fausner ("Donald") and Anita C. Fausner are husband and wife. At the time they filed their petition herein (and since June 21, 1968) petitioners resided in Denton, Texas. They filed joint Federal income tax returns for the calendar years 1966 and 1967. As of the date 1188 of trial in May 1971, Mr. and Mrs. Fausner had six children ranging in age from 6 to 16. Medical and Dental Expenses for 1966 and 1967 On their 1966 return, petitioners itemized medical and dental expenses amounting to $1,328.81. Included in this total was $960 labeled "Misc. at $2.50 per week for 8 persons." The $960 expenditure is unsubstantiated. Similarly, on their 1967 return, petitioners entered in Part IV, line 2, a "[total] cost of medicine and drugs" amounting to $1,032.50, [1] but they were able to substantiate only approximately three/eighths *62 of that amount. Respondent agreed at trial to allow $501.40. The remaining $531.10 is unsubstantiated. Transportation to and from Work During 1966 and 1967 [2]
Donald is employed as a commercial airline pilot by American Airlines ("American"). During the years in question Donald traveled to and from his place of employment by private automobile. On their 1966 and 1967 returns, petitioners deducted $887.04 and $1,453.20, respectively, for transportation expenses incurred traveling to and from work, relying upon section 162 of the Internal Revenue Code of 1954. [3]
As a condition of his employment, Donald had to know certain American Airlines and Federal Aviation Administration rules and regulations. American issued to him American Airlines Operation *63 Manuals, Flight Manuals, maps, and charts. American required that the manual, maps, and charts be kept up to date with revisions which it provided from time to time. It also required Donald to have these aids with him while piloting. In accordance with these requirements, Donald carried a "flight kit bag" containing manuals, maps, charts, a logbook, a flashlight, pens, and paper and weighing 40 pounds. Also in accordance with American's requirements, Donald wore a pilot's uniform while working; by choice, he wore the uniform while commuting to and from the "home" airports. The uniform could not be worn during layovers in other cities except while traveling between his hotel and the airplane. Therefore, in addition to the flight kit bag, Donald carried an overnight bag containing personal items and "street clothes" for use during layovers. American did not provide lockable storage facilities for pilots' equipment or uniforms at either John F. Kennedy International Airport ("JFK") or LaGuardia Airport, Donald's two "home" airports. Consequently, Donald could not leave his equipment or uniforms at either of the airports. Donald worked irregular hours. It is unclear whether he was *64 "on call" 24 hours a day, 365 days a year. Public transportation between Donald's home and place of employment is circuitous, inconvenient, and undependable. Even if Donald had not needed to take his flight kit bag and overnight bag with him on his flights, he would still have driven his automobile to work. He incurred no additional expense by reason of transporting his flight kit and overnight bag. In 1966, Donald made 88 trips from home to work and home again, traveling a total of 7,392 miles. In 1967, Donald made 173 such trips, totaling 14,532 miles. On their 1967 return petitioners also deducted the cost of Donald's traveling from home to JFK and LaGuardia Airports for various work-related events, such as, physical examinations by company doctors, "revision checks," "proficiency checks," "recurrent training," and "route qualifications." Petitioners characterized this cost as an educational expense or, alternatively, an employee business expense. Insurance Premiums In 1967, petitioners paid and deducted as medical expenses the following: Insurer
Amount
Mutual of New York Life
Insurance Co. (MONY)
$169
Harvey Watts, Inc
161
Massachusetts Casualty
159
Pilots Mutual Aid
98
*65 These policies do not provide for the payment of medical services but instead for disability and/or death payments. The MONY and the Massachusetts Casualty policies contain a provision for the waiver of premiums upon the occurrence of events described therein. Son's Dress Uniforms Petitioners' son attended a military academy on Long Island. His "normal workday uniform" was provided by the school. His dress uniforms were paid for by his parents and worn over a four-year period. Petitioners paid $400 to the academy for "registration and uniforms." One hundred dollars of this amount was paid in 1966 and $100 in 1967. The record does not show what percentage of these yearly amounts was paid for uniforms as opposed to registration fees. Miscellaneous Items of Clothing and Equipment American Airlines requires Donald to carry numerous items of flight equipment. Petitioners deducted from their 1967 gross income the total cost of this equipment. Respondent disallowed the following items: Item
Cost
Flashlight
$ 9.98
Pens
17.95
Sunglasses
5.94
Black gloves
5.98
Black shoes, black socks, and laces
37.21
Overnight paraphernalia, e.g., shaving kit
36.58
*66 All of the disallowed items are suitable for ordinary, at-home use. Not all of these items had to be stored in Donald's flight kit bag. Telephone Expenses Although it is unclear for what length of time Donald was "on call" 24 hours a day, his employment as an airline pilot required him to have a telephone in his home. Petitioners' telephone bill for 1967 amounted to $224.85. They deducted the full $224.85 as an employee business expense. Respondent allowed $58.14, one-half of the "basic rate" of $116.28. Alleged Charitable Contribution Three of petitioners' children attended Christ the King School, a parochial school, in 1967. The school was operated by Christ the King Church. In 1967, Donald paid by check the following amounts to the order of Christ the King Church: Month
Amount
January
$ 6.00
February
6.00
February
18.35
March
6.00
April
6.00
May
6.00
August
6.00
September
30.56
October
10.00
November 10.00
$104.91 [4]
All of these checks *67 are endorsed for deposit by Christ the King School. These payments were tuition payments. Typewriter and Books Donald purchased in 1967 a portable typewriter for $71. He used it to type synopses of articles appearing in aviation magazines. A typewriter was not required by his employer. In the same year, Donald also purchased a tax text from Sears for $22.73. He used the text to prepare his Federal income tax return. Petitioners deducted the total cost of both items in 1967, and respondent disallowed the cost for them. Opinion 1. Medical and dental expenses for 1966 and 1967. Respondent has agreed that petitioners are entitled to report $501.40 as a medicine and drugs expense in 1967. The amount which they are entitled to deduct in 1966 remains in dispute: Petitioners claim $960 in addition to the $368.81 which respondent has allowed. The question, then, is whether the $960 qualifies under section 213. Section 213, in relevant part, provides: Sec. 213. Medical, dental, etc., expenses. (a) Allowance of Deduction. - There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise - (1) The amount by which the amount of the expenses *68 paid during the taxable year (reduced by any amount deductible under paragraph (2)) for medical care of the taxpayer, his spouse, and dependents (as defined in section 152) exceeds 3 percent of the adjusted gross income, and (2) an amount (not in excess of $150) equal to one-half of the expenses paid during the taxable year for insurance which constitutes medical care for the taxpayer, his spouse, and dependents. (b) Limitation with Respect to Medicine and Drugs. - Amounts paid during 1190 the taxable year for medicine and drugs which (but for this subsection) would be taken into account in computing the deduction under subsection (2) shall be taken into account only to the extent that the aggregate of such amounts exceeds 1 percent of the adjusted gross income. Section 1.213-1(e)(2), Income Tax Regs., provides: Sec. 1.213-1(e)(2) Medicine and drugs. The term "medicine and drugs" shall include only items which are legally procured and which are generally accepted as falling within the category of medicine and drugs (whether or not requiring a prescription). Such term shall not include toiletries or similar preparations (such as toothpaste, shaving *69 lotion, shaving cream, etc.) nor shall it include cosmetics (such as face creams, deodorants, hand lotions, etc., or any similar preparation used for ordinary cosmetic purposes) or sundry items. See also S. Rept. No. 1622, 83d Cong., 2d Sess., p. 219 (1954); 5 Mertens, Law of Federal Income Taxation, Sec. 31A.07-08. Petitioners estimated that their "out-of-pocket" medical expenses averaged $10 per month, per person, or $80 per month for the entire family. This estimate is exclusive of doctors' and dentists' bills. Petitioners have neither substantiated their claim for an additional deduction above and beyond that allowed by respondent nor demonstrated that their estimate is reasonable. Moreover, they have not shown that only "medicine and drugs," as defined above, were included in their estimate and sundry items such as cosmetics and vitamins were excluded. The additional deduction claimed is, therefore, disallowed. 2. Transportation to and from work during 1966 and 1967. The question is whether petitioners are entitled to deduct $887.04 in 1966 and $1,453.20 in 1967 for transportation expenses incurred by Donald traveling to and from work. Respondent rests his case upon *70 the Court's decision in Robert A. Hitt, 55 T.C. 628 (1971). Petitioners argue that the expenses fall within section 162(a), citing Sullivan v. Commissioner, 368 F. 2d 1007 (C.A. 2, 1966), and Donald W. Fausner, 55 T.C. 620 (1971). The issue in all three of the cited cases is essentially the same, viz., whether a taxpayer driving to work and carrying his tools or equipment is entitled to deduct a portion or all of his transportation expenses. Our prior opinion in Donald W. Fausner, supra, dealt with these same taxpayers' transportation expenses for the calendar year 1965. In it we followed the Second Circuit's decision in Sullivan [5] since the Fausners resided in the Second Judicial Circuit when they filed their petition therein. Jack E. Golsen, 54 T.C. 742 (1970), affirmed 445 F. 2d 985 (C.A. 10, 1971) without considering this issue. Thus we held that the portion of Donald's costs of transportation between home and work which was reasonably attributable to the transportation of his flight kit bag and overnight bag was deductible as a business expense. *71 Hitt was decided the same day that Fausner was decided. Hitt, however, was appealable to the Fifth Judicial Circuit and the United States Court of Appeals for the Fifth Circuit had not previously decided the commuting expense issue. In Hitt, we held that since the taxpayer would have used his automobile in any event to travel to and from work, he was not entitled to a deduction for transporting tools or equipment. See Robert A. Hitt, supra at 633, where we said: [The] need to transport equipment would not have burdened the taxpayer with any additional expense and the entire cost of going to and returning from work is a personal commutation expense. A deduction for transporting heavy, bulky, unwieldy and cumbersome tools and equipment should be allowed only to the extent that the transporting of such items causes 1191 a taxpayer to incur expenses above and beyond those he would otherwise incur in commuting. The reason for the opposite results in Fausner and Hitt is explained in Chief Judge Drennen's concurring opinion in Hitt and in the Court's opinion in *72 Arnold T. Anderson, 55 T.C. 756 (1971). In brief, the reason is that the Tax Court decided in Jack E. Golsen, supra, to apply the rule of the controlling judicial circuit if there is one which is on point, and Sullivan was on point with Fausner. But in this case, as in Hitt, we are free to follow our own judgment. Accordingly, we hold that the taxpayers' cost of transporting both himself and his bags to and from work was a personal expense under section 262[6] rather than an employee business expense under section 162. Robert A. Hitt, supra; [7]Harold Gilberg, 55 T.C. 611 (1971). We adhere to the view, expressed in Hitt, that a taxpayer should not be permitted to circumvent the "commuter rule" by simply throwing some tools or other equipment such as a flight kit bag into his car each time he drives to work. Robert A. Hitt, supra at 633. The Sullivan rule only encourages employees to lobby with employers against the providing of lockable storage space. The latter rule also creates a problem of how to allocate the cost of transporting the tools or equipment. Cf. *73 Arnold T. Anderson, supra.We disallow this deduction for both years. With respect to the claimed deduction for the cost of Donald's traveling to work for such things as "recurrent training," we hold that it is not allowable as an education expense. The various events which Donald attended or participated in were in fact simply part of his job. Furthermore, the deduction is not allowable as a business expense because, as indicated above, commuting expenses are personal expenses. Robert A. Hitt, supra. 3. Insurance premiums. Petitioners claim that the four premium payments, totaling $587, which they made in 1967 are deductible as medical expenses. Respondent denies their claim on the ground that section 213, as amended in 1965, and the regulations promulgated thereunder do not permit the deductions. Section 213, as amended by the Social Security Amendments Act of 1965, 74 Stat. 133; section 1.213-1(e)(4), Income Tax Regs. *74 , as amended by T.D. 6985, 1969-1 C.B. 66, 68-71. Petitioners do not contest the validity of the regulations. Section 213 and the applicable regulations make clear that premiums which are paid to insure against disability or death are not deductible. If such premiums are paid in part to insure against disability or death and in part to cover medical care expenses, they are deductible only if the charge for medical care coverage is separately stated and only to the extent of such charge. The regulations also provide as follows: [Amounts] will be considered payable for other than medical care under the contract if the contract provides for the waiver of premiums upon the occurrence of an event. The policies in question fail to meet such criteria. They all provide for some sort of disability payment; none separately states a charge for medical care coverage; two of the policies contain waiver-of-premium provisions. The premiums are personal, living, or family expenses under section 262, and hence nondeductible. *75 Newi v. Commissioner, 432 F. 2d 998 (C.A. 2, 1970), affirming a Memorandum Opinion of this Court; John A. Guglielmetti 35 T.C. 668 (1961). 4. Son's military uniforms. Petitioners seek to deduct amounts which they say they spent for their son's dress uniforms. Their son was a student at a military academy in 1966 and 1967. On their 1967 return, petitioners list the item as a "contribution" to "LaSalle School (non-profit)." In their briefs, they do not offer any explanation for their action, present any legal theory, or point to any section of the Code or regulations. Without deciding how much was actually expended for dress uniforms, we hold that all such expenditures are nondeductible. Section 262. 5. Miscellaneous items of clothing and equipment. Respondent has allowed deductions for parts of Donald's uniform which are not suitable for ordinary use, such as, 1192 shirts, insignia, hat, jacket, and trousers. Respondent has disallowed deductions for items which he thinks are suitable for "street" or "home" use, such as, an ordinary flashlight, sunglasses, black socks, and pens. In order to prove that they are entitled to the disallowed deductions, *76 petitioners must show (1) that the items were required or essential for employment and (2) that they were not suitable for ordinary use. Donnelly v. Commissioner, 262 F. 2d 411 (C.A. 2, 1959), affirming 28 T.C. 1278 (1957). Petitioners meet the first requirement but not the second. In fact, Donald admitted at trial that he occasionally used some of these items when not "on the job." Accordingly, we agree with respondent's disallowance of these deductions.[8]
6. Telephone expenses. This issue, as presented in this case, is strictly factual: How much of their home telephone expenses should petitioners be allowed to deduct? Respondent is willing to allow one-half of the "basic rate." Petitioners hold out for the whole amount of the telephone bill. We agree with the parties that the expense is deductible, Louis M. Roth, 17 T.C. 1450 (1952), but we think respondent is too generous. We note, first, that petitioners would have had a telephone in their house regardless of American Airlines' requirements and, second, that seven members of the Fausner family besides Donald *77 used the telephone for personal calls. We refrain, however, from lowering respondent's figure. 7. Alleged charitable contribution. The question is whether certain payments made in 1967 by the petitioners to the order of Christ the King Church but endorsed by Christ the King School were charitable contributions or tuition payments. We find that they are the latter. The Fausners had three children enrolled in Christ the King School. They paid no other amounts as tuition. The money was used to maintain the school premises. See and compare Harold DeJong, 36 T.C. 896 (1961), affd. 309 F. 2d 373 (C.A. 9, 1962). 8. Typewriter and books. In 1967, petitioners purchased a typewriter and a tax text from Sears. Since the typewriter was not a requirement of his employment, its cost is nondeductible. E.g., Louis M. Roth, supra (work clothes); Ronald D. Kroll, 49 T.C. 557 (1968) (educational expenses). The cost of the tax text is deductible under section 1.212-1(1), Income Tax Regs., and the cases dealing with the cost of preparing income tax returns, e. g., *78 David L. Loew, 7 T.C. 363 (1946) and Philip D. Armour, 6 T.C. 359 (1946). Finally, petitioners claim deductions for other "educational books" of $159.95 ($253.68 minus (cost of typewriter plus cost of tax text)). This claim is unsubstantiated by the record and, therefore, disallowed. Because of concessions and in accordance with the conclusions reached herein, Decisions will be entered under Rule 50. Footnotes
1. Petitioners did not attach an itemized list of medical and dental expenses to their 1967 return, as they did to their 1966 return.↩
2. The facts pertaining to this issue are almost identical to the facts in an earlier case involving petitioners' taxable year 1965. Donald W. Fausner, 55 T.C. 620↩ (1971).
3. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
4. For some unknown reason, the parties treat this total as equaling $141.20 rather than $104.91. Since we have copies of the checks before us, we will rely upon our own figures.↩
5. Sullivan involved a construction worker who carried a bag of tools with him as he traveled from home to various job locations. The United States Court of Appeals for the Second Circuit allowed a deduction for that part of the cost of commuting allocable to the transportation of the tools. The Court of Appeals added that even if the taxpayer would have driven to and from work had it not been necessary to transport his tools, he ought to be allowed the deduction. Cases in the Seventh Judicial Circuit follow the Sullivan allocation approach where the taxpayer would have driven his automobile in any event, Tyne v. Commissioner, 385 F. 2d 40 (C.A. 7, 1967), reversing a Memorandum Opinion of this Court [Dec. 28,124(M)], but allow a 100 percent deduction where the taxpayer would not have driven but for the necessity of transporting his tools, Tyne v. Commissioner, 409 F. 2d 485 (C.A. 7, 1969), reversing a Memorandum Opinion of this Court See Robert A. Hitt 55 T.C. 628, 631-32↩ (1971).
6. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
7. See also Clarence H. O'Donnell, T.C. Memo. 1962-114↩.
8. For a recent decision, see Harris L. Jackson T.C. Memo. 1970-227↩.