RALPH BORCHERT AND MARTHA BORCHERT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Borchert v. Commissioner
Docket No. 5370-78.
United States Tax Court
T.C. Memo 1982-379; 1982 Tax Ct. Memo LEXIS 364; 44 T.C.M. (CCH) 376; T.C.M. (RIA) 82379; July 7, 1982. Gloria T. Svanas, for the petitioners. Cynthia J. Olson, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) of the Internal Revenue Code *366 of 1954, [1] and Rule 180. [2] The Court agrees with and adopts the Special Trial Judge's Opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax under section 6653(a) as follows: Year
Deficiencies in Tax
Additions to Tax
1974
$5,123.00
$256.15
1975
5,752.00
287.60
1976
12,505.00
625.25
The issues for decision are: (1) whether certain income is taxable to the petitioners or to a so-called family trust; and (2) whether petitioners have established that underpayments of tax for the years 1974 through 1976 were not due to negligence or intentional disregard of rules and regulations under section 6653(a). *367 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition in this case was filed, petitioners resided in Benton Harbor, Michigan. Petitioners filed joint income tax returns for the taxable years 1974 through 1976. In 1974, petitioner Ralph Borchert (Ralph) was an innkeeper and one of three shareholders of a company engaged in the development of a Holiday Inn. In 1974, petitioner Martha Borchert (Martha) was a clerical employee of the State of Michigan. In 1974, Ralph purchased documents from Educational Scientific Publishers (ESP) for the purpose of creating the "Ralph Borchert Family Estate (A Trust)." Ralph consulted an attorney in Michigan prior to establishing the trust. The attorney discouraged Ralph from going forward. This advice was disregarded. On July 18, 1974, Ralph executed, as grantor, a preprinted ESP from entitled "Declaration of Trust Of This Pure Trust" for the Ralph Borchert Family Estate (A Trust) (hereinafter referred to as the Trust). The purpose of the Trust was set forth as follows: THE DECLARED PURPOSE OF THE TRUSTEES *368 OF THIS TRUST shall be to accept rights, title and interest in real and personal properties conveyed by THE CREATOR HEREOF AND GRANTOR HERETO. Included therein is the exclusive use of h   lifetime services and ALL of h   EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, so that Ralph Borchert (Grantor-Creator's Name) can maximize his lifetime efforts through the utilization of his Constitutional Rights; for the protection of his family in the pursuit of his happiness through his desire to promote the general welfare, all of which Ralph Borchert (Grantor-Creator's Name) feels he will achieve because they are sustained by his RELIGIOUS BELIEFS. Thereafter, Martha transferred property to her husband. Then Ralph executed deeds and other documents purporting to convey all his real and personal property to the Trust. The deeds to the real property were dated in 1974 and, with one possible exception, none of these were recorded with the Register of Deeds, Berrien County, Michigan, until 1979. Ralph testified that petitioners' personal residence was located in the Ralph Borchert River Bow Subdivision. Included in the properties *369 purportedly transferred were petitioners' personal residence, household furnishings, promissory notes, United States Government bonds, shares of stock and the "Exclusive use of [Ralph's] lifetime services including ALL of his earned remuneration accruing therefrom." The Trust was to be administered by its Trustees, with a majority vote of the Trustees required for expenditures (including compensation of the Trustees). The Trust was established for a period of 25 years. However, at their discretion the Trustees by unanimous vote could liquidate the Trust at any time "because of threatened depreciation in values, or other good and sufficient reason * * *." Upon liquidation, the assets of the Trust were to be distributed pro rata to its beneficiaries. From the time the Trust was created, and continuing throughout the periods here at issue, both petitioners were Trustees of the Trust. During these periods Ralph held the position of Executive Trustee and Martha was the Executive Secretary of the Trust. Although Richard W. Geipel signed the original Trust document as a Trustee and his name is on some of the other 1974 documents, he appears to have been used merely to establish *370 the Trust. On January 1, 1975, petitioners' daughter, Janice A. Sundheim (Janice), was appointed a Trustee of the Trust. It is clear that petitioners at all time retained full control over the assets of the Trust, and as Trustees of the Trust, were empowered to "do anything any individual may legally do." The preprinted ESP Trust states that the beneficial interests in the Trust were divided into 100 units in "certificate form hereto attached." These certificate forms were not submitted into the record. Ralph received the original 100 units. Thereafter various transfers of the units were made and certificates issued in the names of members of petitioners' family, including their grandchildren. After creation of the Trust, petitioners reported income from the properties purportedly conveyed to the Trust on the Forms 1041 filed by the Trust. Petitioners reported on their individual income tax returns alleged consulting fees and capital gains distributions received from the Trust. Petitioners opened a checking account for the Trust. Both petitioners had signature authority on the Trust checking account and wrote checks on the Trust account. Petitioners used the Trust to pay *371 their personal expenses, such as the upkeep expenses of their personal residence and the real estate taxes on that residence. Despite the alleged transfer of petitioners' property, including their home and personal household goods, petitioners continued to live in their home and the use of these personal items must have remained unchanged. [3]
Ralph disregarded his purported assignment of his lifetime services and disregarded the Trust itself by reporting on petitioners' joint returns income which the Trust designated "Consultant fees" when deducting the same amounts. He also received capital gains distributions from the Trust of $4,000.00, $6,000.00, and $6,000.00 in 1974, 1975, and 1976, respectively. Martha received capital gains distributions from the Trust of $7,000.00, $10,500.00, and $10,500.00 in 1974, 1975, and 1976, respectively. The Trust made distributions of $6,000.00 each to petitioners' three grandchildren in 1974, $3,000.00 each to those grandchildren in 1975 and 1976, and $4,500.00 to their *372 daughter, Janice, in 1975 and 1976. Respondent disregarded the Trust and made adjustments in order to tax petitioners as if it had not been created. Respondent attributed interest income, capital gain income and contract income to petitioners. Respondent subtracted from those amounts the 50 per cent capital gains deduction, real estate taxes and trust income reported. [4] Automatic sales tax adjustments decreased income in 1974 and 1975, whereas there was an increase in income in 1976 because petitioners failed to substantiate any amount greater than that allowed by the sales tax tables. Accordingly, respondent determined that during 1974, 1975, and 1976, petitioners earned the net amounts of $10,997.00, $12,590.00, and $22,090.00, respectively, which was not reported by them and was improperly reported by the Trust. Respondent also determined that petitioners were subject to a minimum tax of $1,288.00 in 1976 and that petitioners were not liable for self-employment tax for 1975 and 1976 on alleged consultant fees from the Trust, thereby reducing their tax by $445.00 for 1975 and $50.00 for 1976. *373 OPINION At the outset, we again find it necessary to enunciate some basic principles regarding the burden of proof. [5] Petitioners contend in their brief that respondent did not meet "his burden of proof," referring to section 482. [6] Petitioners failed to show that they came within any of the exceptions to the general rule set forth in Rule 142(a). Thus, under the general rule the burden is upon petitioners to prove that respondent's determinations are wrong. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). The petitioners' adherence to and claimed reliance on form does not avoid the substance of this Court's consistent rulings that ESP trusts do not shelter taxpayers from taxation.[7] Yet we are faced with another ESP family trust case. We again sustain respondent's determinations for the reasons set forth below. *374 Ralph ostensibly transferred his "lifetime services" and "ALL of his earned remuneration accruing therefrom" to the Trust. Yet, Ralph disregarded the Trust by accepting payment of consulting fees from the Trust. It is absurd to believe that Ralph considered this assignment valid. This is evidenced by the fact that it would have been ridiculous to have the Trust pay such fees to him if the assignment had been valid because the fees would have had to have been returned immediately to the Trust. See Ferguson v. Commissioner,T.C. Memo. 1982-251. Petitioners obviously attempted to use their ESP family Trust to avoid taxation by having the Trust pay for personal, living and family expenses which are nondeductible under section 262. Our review of the record compels us to conclude that the Trust lacked economic substance, was a sham, and was a nullity for Federal income tax purposes for the reasons so carefully set forth in Markosian v. Commissioner,73 T.C. 1235 (1980). [8] As the Court there stated at 1241, even assuming the validity of the trust under State law, the trust "cannot be recognized as a separate jural entity for Federal income tax *375 purposes." There is another basis for sustaining respondent's determinations. Repeatedly, grantors of ESP family trusts have been unable to escape taxation because of the grantor trust provisions of sections 671 through 677. See, e.g. Vnuk v. Commissioner,T.C. Memo. 1979-164, affd. 621 F.2d 1318 (8th Cir. 1980); Vercio v. Commissioner,73 T.C. 1246 (1980); Wesenberg v. Commissioner,69 T.C. 1005 (1978); Snyder v. Commissioner,T.C. Memo. 1982-258; Basham v. Commissioner,T.C. Memo. 1980-545. We continue that repetition here. Petitioners are taxable on the income of the Trust since they retained the power to control it and in fact made substantial distributions from the Trust to themselves in each year. Moreover, it would be totally unrealistic to assume that anyone, including Ralph, would transfer his lifetime services to an ESP family trust without having such control. However, *376 petitioners claim that in 1975 and 1976, Janice, as a trustee, a holder of units of beneficial interest, and the representative of her children, was an adverse party for purposes of sections 671 through 677. We do not agree. Whether the economic arrangement of a trust cause a trustee to be an adverse party is a factual question dependent on the merits of each case. Paxton v. Commissioner,520 F.2d 923 (9th Cir. 1975), affg. 57 T.C. 627 (1972). Petitioners have failed to prove that the interest of Janice was a "substantial beneficial interest" and on this record we find to the contrary. Even if her interest could be characterized as substantial, the record does not indicate in any way that Janice was an adverse party. Sections 672 and 674. See Wesenberg v. Commissioner,supra;Broncatti v. Commissioner,T.C. Memo. 1981-452; and Antonelli v. Commissioner,T.C. Memo. 1980-544. Rather, there is nothing in the record to show by a preponderance of the evidence that this adult child of petitioners was anything but a related or subordinate party presumed to be subservient to the grantor under section *377 672(c) for purposes of sections 674 and 675. It is clear that petitioners were not adverse parties to each other. Vercio v. Commissioner,supra.Based on the application of the grantor trust provisions, we sustain respondent's determinations. Petitioners have the burden of proving that their underpayments of tax were not due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). Vnuk v. Commissioner,supra; see Crowley v. Commissioner,T.C. Memo. 1982-211. Not only have petitioners not met this burden, but we believe the record is clear that the petitioners were negligent and intentionally disregarded the rules and regulations. Ralph claimed at trial that he set up the trusts for estate planning purposes for his family. We are not required to believe unsupported self-serving statements made by a petitioner without evaluating it in light of all the facts and circumstances in the record. Anderson v. Commissioner,55 T.C. 756, 758 (1971). Based upon this record, we are convinced that the primary, if not sole, purpose of the petitioners was to disregard the tax laws in their *378 attempt to avoid application of the law to them.
Petitioners argue on brief that the standard of care was vastly different in 1974. In answer, we turn to the atatement in Harris v. Commissioner,T.C. Memo. 1981-46: "To anyone (and we would include petitioners) not incorrigibly addicted to the 'free lunch' philosophy of life, the entire scheme had to have been seen as a wholly transparent sham." Apparently this was the reaction of the attorney in Michigan who tried to discourage Ralph from going forward with his scheme. Yet, in his attempt to get a free lunch, Ralph disregarded this advice. Ralph was an intelligent, sophisticated businessman when he formed the Trust in 1974 and his wife was then employed by the State of Michigan. Petitioners knew what they were doing and intentionally disregarded the tax laws. Petitioners also contend on brief that they relied on ESP's representations. Balderdash! Ralph's testimony is to the contrary. The five per cent addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations in the family trust cases in situations similar to the one before us has been upheld by this Court in *379 virtually every case. Wesenberg v. Commissioner,supra.[9] We consider the five per cent addition to tax a modest penalty to impose on someone engaged in a "flagrant tax avoidance scheme." Wesenberg v. Commissioner,supra at 1015. We agree that the additions to tax should be imposed. With respect to 1976, petitioners failed to prove that they were not subject to the minimum tax and that they incurred sales tax greater than the amount allowed by respondent. Welch v. Helvering,supra; Rule 142(a). Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 in effect during the taxable years, unless otherwise indicated. All references to Rules are to the Tax Court Rules of Practice and Procedure. ↩
2. Pursuant to the order of the Chief Judge, on the authority of the "otherwise provided" language of Rule 182, the post-trial procedures set forth in that rule are not applicable in this case.↩
3. Among the items transferred were beds, chairs, tables, china, bedspreads, hair dryers, Christmas lights, "comp. fishing equip. 4 rods, 5 reels," diamond rings, etc.↩
4. This did not include the capital gains distributions reported by petitioners on Schedule D of their own returns. When added for each year, the capital gains distribution and the additional amount of capital gain attributed to petitioners equals the total capital gains income reported by the Trust for that year.↩
5. See Gibson v. Commissioner,T.C. Memo. 1982-374↩. 6. Since respondent did not rely on section 482 in this case, we will not mention it further other than to observe that section 482 does not shift the burden of proof to respondent.↩
7. See Antonelli v. Commissioner,T.C. Memo. 1980-544; Basham v. Commissioner,T.C. Memo. 1980-545; and Dombrowski v. Commissioner,T.C. Memo. 1980-261. We are aware of over fifty decisions of this Court and the Courts of Appeals which have reached this result. See, Vnuk v. Commissioner,621 F.2d 1318 (8th Cir. 1980), affirming T.C. Memo. 1979-164; and Gran v. Commissioner,664 F.2d 199 (8th Cir. 1981), affirming T.C. Memo. 1980-558↩.
8. See e.g., Ferguson v. Commissioner,T.C. Memo. 1982-251; Neve v. Commissioner,T.C. Memo. 1981-39; and Antonelli v. Commissioner,supra.↩
9. See Broncatti v. Commissioner,supra;Corcoran v. Commissioner,supra; Basham v. Commissioner,supra; and Antonelli v. Commissioner,supra.↩